IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DENISE PAYNE, Individually,          )
and NATIONAL ALLIANCE FOR            )
ACCESSIBILITY, INC., a Florida       )
not for profit corporation,          )
                                     )
                Plaintiffs,          )
                                     )          1:12-cv-1143
        v.                           )
                                     )
CHAPEL HILL NORTH PROPERTIES,        )
LLC, a Domestic Limited              )
Liability Company,                   )
                                     )
                Defendants.          )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiffs National Alliance for Accessibility, Inc.
("NAA"), and Denise Payne ("Payne") seek declaratory and
injunctive relief against Defendant Chapel Hill North
Properties, LLC ("CHNP") for alleged violations of the Americans
with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2006 &
Supp. 2011) ("ADA"). Before the court is CHNP's motion to
dismiss the complaint for lack of subject matter jurisdiction
pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 8.)
For the reasons set forth below, the motion will be granted.

## I.  BACKGROUND

Payne, who was born with cerebral palsy and is confined to
a wheelchair, characterizes herself as an advocate for disabled

individuals. From her home state of Florida, she and the organization she founded, the NAA, seek to promote equality for disabled individuals through ADA litigation. As of September 2012, Payne and the NAA had filed more than 290 lawsuits, including over eighty lawsuits in North Carolina, asserting ADA claims. Nat'l Alliance for Accessibility, Inc. v. NCP Western Blvd. LLC, No. 5:11-CV-357-FL, 2012 WL 3834931, at *1 (E.D.N.C. Sept. 4, 2012). Approximately 24 of these lawsuits have been filed in the Middle District of North Carolina.

CHNP operates a shopping center at 1800 Martin Luther King, Jr. Boulevard in Chapel Hill, North Carolina ("Property"). The present lawsuit arises from Payne's visits to the Property on June 10, 2010, April 1, 2012, and September 27, 2012. (Doc. 1 ¶¶ 8-15.) For purposes of this motion, the court assumes without deciding that the Property is a place of public accommodation subject to the requirements of Title III of the ADA. See 42 U.S.C. § 12182.

Payne claims that CHNP "discriminated against [her] by denying [her] access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages, and/or accommodations of" the Property, in violation of 42 U.S.C. § 12181 et seq. (Doc. 1 ¶ 20.) Specifically, Plaintiffs identify twelve alleged ADA violations. Most are vaguely stated. By way of example, the allegations of the complaint

2

include the following: disabled parking spaces "do not have clear and level access aisles provided"; signage is not mounted at sufficient heights; slopes of curb ramps contain "excessive slopes" and "there are [ramp] changes in levels of greater than 1/2 inch"; there are "permanently designated interior spaces without proper signage"; counters are in excess of 36 inches [tall]; and "there are dispensers provided for public use in the restroom, with controls outside the ranges prescribed in Section 4.27 of the ADAAG." (Id. ¶ 21.) Payne alleges generally that these architectural barriers have "endangered her safety." (Id. ¶ 5.) To be sure, there is no allegation in the complaint that Payne was prevented from accessing and shopping at the Property. Plaintiffs allege that they would need a full inspection of the Property to "measure all of the discriminatory acts violating the ADA and all of the barriers to access." (Id. ¶ 22.)

The complaint alleges that "Payne intends to visit Defendant's property once again." (Doc. 1 ¶ 16.) In an affidavit filed on January 11, 2013, in response to CHNP's motion to dismiss, Payne states that at the time of filing the complaint she intended to visit the Property in June 2013. (Doc. 11-1 ¶ 8.) She says she shops there because it "has an attractive selection of goods and services" and "is convenient based on her travel patterns." (Doc. 1 ¶¶ 8, 15.) In that regard, she notes that she is endeavoring to set up local NAA

chapters in North Carolina in Asheville, Wilmington, Fayetteville, and Raleigh. (Doc. 11-1 ¶ 3.) She represents that she usually flies into the Raleigh airport and, when she travels to Clemmons to meet with her attorney, she "pass[es] through Chapel Hill." (Id. ¶ 10.) She concludes that at the time of the complaint she planned to travel to the "Chapel Hill area at least twice per year" and "plan[s] to return to Chapel Hill and to shop at the Defendant's property." (Id. ¶¶ 10, 11.)

## II. ANALYSIS

CHNP moves to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1). (Doc. 8.) CHNP argues, as several other district courts in North Carolina have found,[1] that Plaintiffs fail to sufficiently show that Payne will return to the Property and therefore are unable to meet the burden of demonstrating a likelihood of future harm to her. CHNP contends that Payne lives over 700 miles from the Property, lacks a reliable record of past patronage of the Property, and has offered reasons to return to it that are not credible for any reason other than to test whether Defendant has remedied the alleged defects. Because Payne lacks standing, CHNP contends, the NAA, whose status is derivative of Payne's, lacks standing as well. (Doc. 9.)

---

[1] See, e.g., Nat'l Alliance for Accessibility, Inc. v. Macy's Retail Holdings, Inc., No. 1:11-cv-877, 2012 WL 5381490, at *3 (M.D.N.C. Oct. 30, 2012) (citing cases). Of course, standing must be assessed under the specific facts of each case.

4

Plaintiffs argue that CHNP has acted unlawfully and that Payne's three visits to the Property establish a real and immediate threat of repeated injury that is not conjectural or hypothetical. Plaintiffs also object here, as they have in other cases, to any evaluation of standing using the proximity test -- a set of factors for determining standing used by a large number of federal courts, including district courts in the Fourth Circuit, based on considerations such as a plaintiff's distance from the business and her past patronage of the establishment. Instead, Plaintiffs urge the court to focus on the fact that Defendant's alleged non-compliance with the ADA creates an ongoing injury to disabled individuals like Payne. (Doc. 11.)

Federal district courts exercise limited jurisdiction. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). For a case or controversy to be justiciable in federal court, a plaintiff must allege "'such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf.'" White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004)). The judicial doctrine of standing is "an integral component of the case or controversy requirement." CGM, LLC v.

BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011) (citation and internal quotation marks omitted). The party seeking to invoke the federal courts' jurisdiction has the burden of satisfying Article III's standing requirement. Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). To meet that burden, a plaintiff must demonstrate three elements: (1) that she has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the challenged conduct; and (3) that a favorable decision is likely to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Where, as here, a plaintiff seeks injunctive relief, the injury in fact element requires a showing of "irreparable injury." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). According to the Supreme Court, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." Id. at 103. Absent a "sufficient likelihood that [the plaintiff] will again be wronged in a similar way, [the plaintiff] is no more entitled to an injunction than any other citizen." Id. at 111.

Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction. CGM, 664 F.3d at 52 (distinguishing statutory standing from Article III and prudential standing); see also Pitt Cnty. v. Hotels.com, L.P.,

6

553 F.3d 308, 311 (4th Cir. 2009) (noting that the district court re-characterized a defendant's challenge to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)). When resolving a motion under Rule 12(b)(1), "'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'"[2] Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)). Where a defendant has not provided evidence to dispute the veracity of the jurisdictional allegations in the complaint, the court accepts

[2] It has been said that "[t]he procedural means for resolving standing issues are not as clearly defined as might be imagined." 13B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3531.15, at 301 (3d ed. 2008). In the Fourth Circuit, where a party moves under Rule 12(b)(1) on the basis that a complaint fails to allege facts supporting the court's subject matter jurisdiction, the plaintiff "is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). On the other hand, where a party contests the veracity of the jurisdictional allegations in the complaint, "[a] trial court may consider evidence by affidavit" and "weigh[] the evidence to determine its jurisdiction." Id. This appears to be consistent with the Fifth Circuit's approach, which permits district courts to consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by the undisputed facts plus the court's resolution of disputed facts" when resolving motions under Rule 12(b)(1). Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008) (citation and internal quotation marks omitted); see also Hostetler v. United States, 97 F. Supp. 2d 691, 694-95 (E.D. Va. 2000) (applying the same test).

facts alleged in the complaint as true just as it would under Rule 12(b)(6). Kerns v. United States, 585 F.3d 187, 192-93 (4th Cir. 2009) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). In addition, the court assumes the truth of the uncontested facts augmented by a plaintiff's affidavits. Fair Hous. in Huntington Comm., Inc. v. Town of Huntington, N.Y., 316 F.3d 357, 362 (2d Cir. 2003). Ultimately, the plaintiff bears the burden of "clearly . . . alleg[ing] facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute." Warth v. Seldin, 422 U.S. 490, 518 (1975).

## A. Plaintiffs' Claim of Actual or Imminent Injury

Plaintiffs contend that absent an injunction from this court, they will suffer an irreparable injury because of CHNP's alleged ongoing violations of the ADA. A disabled individual seeking an injunction under the ADA, however, must, like all litigants in federal court, satisfy the case or controversy requirement of Article III. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (en banc). A plaintiff's "profession of an 'inten[t]' to return to the places [she] ha[s] visited before" is generally insufficient to establish standing to seek injunctive relief. Lujan, 504 U.S. at 564 (first alteration in original). "Such 'some day' intentions -- without any description of concrete plans, or indeed even any specification of when the some day will be -- do

8

not support a finding of the 'actual or imminent' injury" required by Supreme Court precedent interpreting Article III. Id. Thus, to show likely future harm, Payne must demonstrate a sufficiently concrete intention to return to CHNP's Property in Chapel Hill. Norkunas v. Park Rd. Shopping Ctr., Inc., 777 F. Supp. 2d 998, 1001 (W.D.N.C. 2011) (citing Lujan, 504 U.S. at 564), aff'd, 474 F. App'x 369 (4th Cir. 2012) (unpublished per curiam opinion).

Here, although Payne lives in Florida, she states she is in the process of establishing local chapters of her NAA advocacy group in Raleigh, Asheville, Wilmington, and Fayetteville. (Doc. 11-1 ¶ 3.) She alleges that she patronizes the Property because she "prefers it," "it is convenient based on her travel patterns," and it "has an attractive selection of goods and services." (Doc. 1 ¶¶ 8, 15.) She also acknowledges that she desires to visit the Property in the future "not only to avail herself of the goods and services available at the property but to assure herself that this property is in compliance with the ADA." (Id. ¶ 19.) In sum, she states that her visits to the Property arise from her occasional, perhaps semi-annual (Doc. 11-1 at 10), travels around the state of North Carolina – from Asheville to Wilmington – as she works on establishing possible local chapters of the NAA.

In assessing the plausibility of a plaintiff's claim that she is likely to return to the site of the discrimination (at least once the barriers to her return are removed), courts often find the following factors helpful: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." Norkunas, 777 F. Supp. 2d at 1002; see Access 4 All, Inc. v. Absecon Hospitality Corp., Civ. A. No. 04-6060, 2006 WL 3109966, at *6 (D.N.J. Oct. 30, 2006); see also Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (per curiam) (considering a plaintiff's past patronage of the defendant's establishment and its proximity to her home to be factors in finding standing).[3] Here, too, the court finds these factors helpful and will consider them, in addition to any other relevant factor raised by the facts. Each will be addressed in turn.

### 1. Proximity to Defendant's Business

Courts have found that a plaintiff's proximity to a

---

[3] The court previously considered the application of these factors in light of Daniels v. Arcade, L.P., 477 F. App'x 125, 129 (4th Cir. 2012) (unpublished opinion), and found the case distinguishable. Macy's Retail, 2012 WL 5381490, at *4-5. The court finds the reasoning in Macy's Retail applies to the facts of this case. Accord Nat'l Alliance for Accessibility, Inc. v. W & K of Asheville, LLC, No. 1:12CV24, 2012 WL 6761420, at *5 (W.D.N.C. Nov. 26, 2012) (Howell, Mag. J.) (finding factual situation "a far cry" from that in Daniels), adopted, 2013 WL 30131 (W.D.N.C. Jan. 3, 2013).

defendant's place of business is generally probative of the likelihood that the plaintiff will return to the sight of past discrimination and suffer harm. <u>Camarillo</u>, 518 F.3d at 158; <u>Nat'l Alliance for Accessibility, Inc. v. Waffle House, Inc.</u>, No. 5:10-CV-375-FL, 2011 WL 2580679, at *2 (E.D.N.C. June 29, 2011) ("<u>Waffle House I</u>"); <u>cf.</u> <u>Daniels v. Arcade, L.P.</u>, 477 F. App'x 125, 129 (4th Cir. 2012) (unpublished opinion) (noting that the plaintiff's home near the defendant's business weighed in favor of the plaintiff's standing). While no per se rule should apply, the further away a plaintiff ordinarily finds herself from a business, the less likely she is to suffer future harm. <u>Molski v. Kahn Winery</u>, 405 F. Supp. 2d 1160, 1163-64 (C.D. Cal. 2005) ("Where the distance between [a plaintiff's residence and a place of public accommodation] is significant, especially if it is in excess of 100 miles, courts have often held that such a distance weighs against finding a reasonable likelihood of future harm.").

Payne claims that "I almost always" fly into the Raleigh airport and plans to "pass through Chapel Hill" when she meets her attorney in Clemmons, North Carolina (approximately 103 miles away). (Doc. 11-1 ¶ 10.) However, Payne's home in Broward County, Florida, is approximately 700 or more miles from the Property. The court notes, moreover, that this representation contradicts her sworn statements in a companion

11

case where, in order to avoid dismissal of her claims, she states that upon arriving at the Raleigh airport her "first stop is always Greensboro" where she has visited a Big Lots store that is the target of that lawsuit because Greensboro is where her attorney of record has his office. Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 1:11cv730 (M.D.N.C.) (Doc. 18-1 ¶¶ 6-7). Of course, the certificate of service of her attorney, Mr. Lane, in this and other cases plainly notes that his office is not in Greensboro, but rather in Clemmons (as Payne notes here). However, the fact that Payne has submitted such clearly conflicting statements clearly calculated to avoid dismissal in these cases is very troubling and casts significant doubt on her claims.[4]

---

[4] Unfortunately, Payne has a practice of submitting false information to courts in an effort to avoid dismissal. For example, in National Alliance for Accessibility, Inc. v. Triad Hospitality Corp., No. 1:11-cv-527, 2012 WL 996661, at *9-10 (M.D.N.C. Mar. 23, 2012), she submitted an affidavit to this court in support of her standing to bring an ADA claim against a hotel in Winston-Salem which contained representations as to her travel activities that were demonstrated to be materially false. Other courts have noted and condemned Plaintiffs' gamesmanship. See, e.g., W & K of Asheville, 2012 WL 6761420, at *3-4 (Howell, Mag. J.) (finding that Payne and NAA "attempt[ed] to fabricate standing by making misleading and false factual allegations to the Court" as Payne had also attempted to do in another case in the Western District of North Carolina), adopted, 2013 WL 30131 (W.D.N.C. Jan. 3, 2013) (ordering that Magistrate Judge retain jurisdiction to determine whether sanctions were warranted); Payne v. AAC Invests., Inc., No. 5:12-CV-00264-F, 2013 WL 791261 (E.D.N.C. Mar. 4, 2013) (finding Payne's action "frivolous, unreasonable, and without foundation"; allowing defendant's motion for attorneys' fees).

Given the vague nature of the reason Payne claims for visiting the Property, her claim that to shop there she would travel from her home in Florida or deviate from her occasional travels through North Carolina, and her erroneous and conflicting representations to this court about her travel plans and reasons, this factor weighs strongly against Payne's standing.

### 2.  Plaintiffs' Past Patronage

Courts have found that a plaintiff's past patronage of a defendant's place of business is probative of a likelihood to return.  See <u>Kahn Winery</u>, 405 F. Supp. 2d at 1163.  However, "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by continuing, present adverse effect.'"  <u>Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.</u>, No. Civ. A. 3:05-CV-1307-G, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005) (alterations in original) (quoting <u>Lyons</u>, 461 U.S. at 102). Accordingly, a plaintiff's single prior visit to a defendant's place of business is insufficient to make it likely that she will face harm there in the future.  <u>Kahn Winery</u>, 405 F. Supp. 2d at 1164.  And even multiple prior visits to a place of public accommodation are not sufficient to show a likelihood of future harm in the absence of additional allegations.  <u>Naiman v. N.Y. Univ.</u>, No. 95 CIV. 6469(LMM), 1997 WL 249970, at *5 (S.D.N.Y.

13

May 13, 1997); see Payne v. Sears, Roebuck & Co., No. 5:11-CV-614-D, 2012 WL 1965389, at *5 (E.D.N.C. May 31, 2012) (noting that "[i]n fact, the opposite might be true": "ADA Title III plaintiffs, aware that a single visit to an establishment weighs against their having standing, are likely to visit the establishment twice before suing its owner, thus intentionally avoiding the single-visit rule" and that "[s]uch litigation gamesmanship says nothing about a plaintiff's likelihood of suffering future injury.").

Here, Payne represents that she visited the Property on three occasions, June 10, 2010, April 1, 2012, and September 27, 2012. (Doc. 1 ¶ 8, 14, 15.) She does not indicate why, of all the shopping centers between the Raleigh airport and her lawyer's office some 100 miles away in Clemmons, she chooses to visit the Property. She asserts only that she "plan[s] to continue [her] pattern of traveling to North Carolina to meet with business contacts and continue the work of [her] foundation" and that "[d]uring these trips, [she] plan[s] to return to Chapel Hill and to shop at the Defendant's property." (Doc. 11-1 ¶ 11.) CHNP points out that Payne only claims a single receipt for $5.22 for a single purchase at the Property and argues that this is hardly evidence of a sincere interest in the retail goods available at the Property. At this stage in the proceedings, however, the court is obliged to draw the

14

complaint in a light most favorable to Payne and therefore accepts that she has visited the Property three times and made a purchase. Of course, three visits in a two-year span is meager, but this factor weighs in Plaintiffs' favor, even if slightly.

### 3. Definitiveness of Plans to Return

Courts also consider the definitiveness of a plaintiff's plans to return to the defendant's place of business. Nat'l Alliance for Accessibility, Inc. v. Waffle House, Inc. (Waffle House II), No. 5:10-CV-385-D, 2011 WL 4544017, at *2 (E.D.N.C. Sept. 29, 2011). Although a plaintiff does not need to engage in the "futile gesture" of re-visiting a place of business that is unsafe for disabled individuals, she must still prove that she would visit the business in the imminent future but for those safety barriers. Steger v. Franco, Inc., 228 F.3d 889, 892-93 (8th Cir. 2000). When assessing the definitiveness of a plaintiff's plans to return, courts have considered booked hotel reservations, see Disabled Patriots of Am., Inc. v. Fu, No. 3:08CV542-RJC-DSC, 2009 WL 1470687, at *3 (W.D.N.C. May 26, 2009), or plane tickets, Lujan, 504 U.S. at 579 (Kennedy, J., concurring) (explaining that a requirement that the plaintiff demonstrate the acquisition of airline tickets or announce a "date certain" to return to the location at the core of their suit is not trivial because a plaintiff must establish a personal stake in the case's outcome (citing Lyons, 461 U.S. at

15

101-02)), to be indicative of concrete plans, while vague and self-serving desires to revisit a particular establishment fall short of the definitiveness required to show a likelihood of future harm, Norkunas, 777 F. Supp. 2d at 1002. In any event, a plaintiff's intent to return must exist at the time the complaint is filed. Steger, 228 F.3d at 892-93 (noting that the relevant facts for standing purposes are those that exist at the time a complaint is filed); see also Am. Civil Liberties Union of Nev. v. Lomax, 471 F.3d 1010, 1015 (9th Cir. 2006) (same).

In this case, the complaint alleges that Payne "intends to visit North Carolina again in June of 2013" and "intends to visit Defendant's property once again." (Doc. 1. ¶ 16.) Yet, Payne's representations, even when taken in a light most favorable to her, cast substantial doubt on the definitiveness of her plans to return to this Property. It is located on a 100-mile stretch between the Raleigh airport and her lawyer in Clemmons, not to mention in the opposite direction of Fayetteville and Wilmington, where Payne states she is considering establishing other local chapters of NAA. Payne has not expressed any definite reason she would patronize the Property other than to test it for compliance. This is indeed the principal reason she visits the scores of other properties

16

that are the subject of other cases Payne has before this court.[5]
(See Doc. 1 ¶ 13; Doc. 11-1 ¶ 4.)  Courts are split over whether
a plaintiff can demonstrate a concrete interest in returning to
a business based on assessing its compliance with the ADA.
Compare Norkunas, 777 F. Supp. 2d at 1005 (citing cases) ("[T]he
law makes clear that a Title III plaintiff cannot use her status
as a tester to satisfy the standing requirements where she would
not have standing otherwise."), and Harris v. Stonecrest Care
Auto Ctr., LLC, 472 F. Supp. 2d 1208, 1219-20 (S.D. Cal. 2007)
("Where [Title III] litigation is the only reason for a
plaintiff's visit to a particular local establishment, once
litigation is complete it is unlikely such a plaintiff will
return to avail himself of the business' goods or services, or
to visit the local business for any other reason."), with
Absecon Hospitality, 2006 WL 3109966, at *7 ("[T]he motive for a
plaintiff to return to a particular place of public
accommodation is not a factor typically considered by the
Court.").

    In this court's view, the better approach is that a
plaintiff "'cannot use her status as a tester to satisfy the
standing requirements where she would not have standing

---

[5] In ADA litigation, a "tester" is an individual who tests a location's compliance with federal disability statutes. Judy v. Pingue, No. 2:08-CV-859, 2009 WL 4261389, at *5 (S.D. Ohio Nov. 25, 2009).  That Payne is motivated to test the Property's compliance with the ADA is underscored by her complaint, in which she admits as much.  (Doc. 1 ¶ 5.)

17

otherwise.'" <u>Waffle House I</u>, 2011 WL 2580679, at *3 (quoting

<u>Norkunas</u>, 777 F. Supp. 2d at 1005); <u>see also</u> <u>Nat'l Alliance for</u>

<u>Accessibility, Inc. v. Rite Aid of N.C., Inc.</u>, No. 1:10CV932,

2011 WL 4499294, at *8 (M.D.N.C. Sept. 27, 2011) (Auld, Mag. J.)

(same), <u>adopted</u>, No. 1:10CV932 (M.D.N.C. Nov. 7, 2011).

Therefore, Plaintiffs' vague reasons and uncertain date when

Payne may return to the Property and Payne's admitted status as

a tester -- in the absence of a specific interest in <u>this</u>

particular Property -- cast doubt on the definitiveness of her

plans to return to it. Consequently, the court finds that Payne

fails to provide indicia of concrete plans to support a finding

that she will suffer an actual or imminent injury necessary for

standing. <u>See</u> <u>Lujan</u>, 504 U.S. at 564.

**4. Frequency of Nearby Travels**

Courts also look to the frequency of a plaintiff's travels

to the nearby area. <u>Waffle House II</u>, 2011 WL 4544017, at *2.

Payne alleges that she visited North Carolina in July 2010 and

"was in the Greensboro area" on her way back to Florida from a

church retreat in Virginia.[6] (Doc. 1 ¶ 9.) She traveled through

Winston-Salem, Greensboro, High Point, and Raleigh to meet

business contacts related to NAA. (<u>Id.</u>) She made another trip

to North Carolina in October 2010 and traveled to Asheville.

---

[6] Payne does not state what her being in the Greensboro area has to do
with the Property, which is approximately 45 miles from Greensboro.

(Id. ¶ 10.)  In October 2011, she again flew into the Raleigh airport, which is 20 miles from the Property, for a meeting in Raleigh with her NAA and stayed at a hotel 30 miles away from the Property. (Id. ¶¶ 10-13.)  In March 2012, she again flew to Raleigh, met with her lawyer in Winston-Salem, and stayed at a hotel in Raleigh some 34 miles away from the Property -- but chose to visit it anyway. (Id. ¶ 14.)  She alleges she visited the Property on September 27, 2012, during a trip to the Raleigh area. (Id. ¶ 15.)  She alleges she intends to visit in June 2013 to meet with disabled students in the "Raleigh/Durham/Chapel Hill area" and intends to visit the Property. (Id. ¶ 16.)

The court has already noted how Payne's current representation that she visits the Property because she passes through Chapel Hill on her way to meet with her lawyer in Clemmons is contradicted by her sworn statement in another case in this court that her "first stop is always Greensboro."  In addition to her patently false statements offered to this court in other cases in an effort to avoid dismissal, her claims that she visits the Property because it is "convenient" simply strains credulity.  Moreover, her contention that she intends to visit it in connection with her sporadic trips to the state constitute weak evidence that her nearby travels will make it likely that she will suffer actual or imminent harm at the

19

Property. She is likely to do so only if she seeks to go well out of her way from her business in the state for the sole purpose of "testing" the Property. See Nat'l Alliance for Accessibility, Inc. v. Bhuna Corp., No. 1:11cv79, 2011 WL 6935497, at *3-4 (W.D.N.C. Dec. 3, 2011) (Howell, Maj. J.) ("It is implausible that Payne, a Florida resident who travels approximately once or twice a year to [North Carolina] plans to return to each of the thirty-two (32)[7] properties in North Carolina she has sued for noncompliance with the ADA." (quoting and reaching same conclusion as Waffle House I, 2011 WL 2580679, at *3)), adopted, 2011 WL 6936181 (W.D.N.C. Dec. 30, 2011).[8]

Taking the allegations concerning standing as a whole, the court concludes that Payne has failed to make the requisite showing that she is sufficiently likely to suffer an actual or imminent injury. Her residence of some 700 miles from CHNP's Chapel Hill Property, her vague statement of an intention to return to the Property, the fact that the Property bears little proximity to her stated travel plans, and her misrepresentations to the court as to her travel intentions all render implausible her representation that she faces an actual or imminent threat of future harm despite her claim that she has visited the Property three times in the past two years. The absence of a

---

[7] Now over 80.

[8] In this regard, the court does not hold Payne's litigation history against her.

plausible claim that Payne will suffer an irreparable injury in fact prevents her from having standing to utilize the injunctive power of the federal courts.[9]

**B.    NAA**

Plaintiffs fail to make a separate argument concerning the NAA's basis for standing, but the complaint appears to rely on NAA's status as Payne's frequent litigation partner.  Generally, in the absence of a direct injury to an organization, it will only have standing if it can show that (1) at least one of its members would have standing to sue as an individual, (2) the interests at stake in the litigation are germane to the organization's purpose, and (3) neither the claim made nor the relief requested requires the participation of the individual members in the suit.  <u>Retail Indus. Leaders Ass'n v. Fielder</u>, 475 F.3d 180, 186 (4th Cir. 2007).  Such associational or representative standing is satisfied even where just one of the association's members would have standing.  <u>Warth</u>, 422 U.S. at 490.

Here, the only member of the NAA who is identified specifically in the record is Payne.  Because she lacks standing

---

[9]  Plaintiffs rely on <u>National Alliance for Accessibility, Inc. v. CMG Bethesda Owner LLC</u>, No. 8:12-CV-1864-JFM, 2012 WL 6108244 (D. Md. Dec. 7, 2012), which found standing.  However, that case involved a hotel where Payne had a reservation to stay and involved a much more definite plan.  Moreover, the case was nevertheless dismissed as moot because Payne failed to establish a plausible claim that she intended to stay there after the single reservation had expired.

to sue in her own right, the NAA has failed the first prong of the associational standing test. Consequently, CHNP's motion to dismiss pursuant to Rule 12(b)(1) (Doc. 8) will be granted as to Plaintiff NAA.

## III. CONCLUSION

For the reasons set forth above, therefore,

IT IS ORDERED that Defendant CHNP's motion to dismiss (Doc. 8) is GRANTED.

A separate Judgment will be entered.

_____/s/___Thomas D. Schroeder
United States District Judge

May 22, 2013